IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOSE CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>ANDWIND, et al.,<br><br>    Defendants. | Case No. 19-cv-07467<br><br>**Judge Thomas M. Durkin**<br><br>**Magistrate Judge Sunil R. Harjani** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

    Plaintiff Bose Corporation ("Plaintiff" or "Bose") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 2

    A. Bose's Trademarks and Products................................................................... 2

    B. Defendants' Unlawful Activities ................................................................... 2

III. ARGUMENT.................................................................................................................... 3

    A. Standard for Temporary Restraining Order and Preliminary Injunction ................ 5

    B. Bose Will Likely Succeed on the Merits ................................................................ 5

    C. There Is No Adequate Remedy at Law, and Bose Will Suffer Irreparable Harm in the Absence of Preliminary Relief............................................................. 7

    D. The Balancing of Harms Tips in Bose's Favor, and the Public Interest Is Served by Entry of the Injunction ................................................................................. 8

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ........................................... 9

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the BOSE Trademarks Is Appropriate ........... 9

    B. Preventing the Fraudulent Transfer of Assets Is Appropriate ............................. 10

    C. Bose Is Entitled to Expedited Discovery ............................................................. 11

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................................ 12

VI. CONCLUSION............................................................................................................... 12

**MEMORANDUM OF LAW**

I.   **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Bose Corporation ("Plaintiff" or "Bose") is requesting temporary *ex parte* relief based on an action for trademark infringement and counterfeiting, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") against the defendants identified on Schedule "A" to the Amended Complaint (collectively, the "Defendants"). As alleged in Bose's Amended Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling unauthorized and unlicensed products, including headphones, speakers, and related audio components, using infringing and counterfeit versions of Bose's federally registered trademarks (collectively, the "Counterfeit Bose Products"), through the fully interactive, commercial Internet stores operating under at least the Online Marketplace Accounts listed in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores").

Defendants run a sophisticated counterfeiting operation, and are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores, through which Illinois residents can purchase Counterfeit Bose Products. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Bose is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Bose Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Bose respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II. STATEMENT OF FACTS

### A. Bose's Trademarks and Products

Since 1964, Bose has been engaged in the design, distribution, and sale of high-performance electronic audio products for consumers and professionals, including professional loudspeakers, bookshelf speakers, factory-installed sound systems custom-designed for specific automobiles, portable home CD/FM/AM radio sound systems, portable digital music systems, home theater systems, aviation headsets, around-ear and over-ear noise cancelling headphones, in-ear and around-ear sport headphones, audio and mobile headphones, including Bluetooth headsets, and related components (collectively, the "Bose Products"). Declaration of Michelle Brownlee, the "Brownlee Declaration," at ¶ 3. In the United States and around the world, the Bose brand has come to symbolize high quality, and the Bose Products are renowned for their quality, performance, and reliability. *Id.* at ¶ 4.

Bose has registered several of its trademarks with the United States Patent and Trademark Office (collectively, the "BOSE Trademarks"). *Id.* at ¶ 5. Bose Products typically include at least one of the BOSE Trademarks, and Bose uses its BOSE Trademarks in connection with the marketing of its Bose Products. *Id.* True and correct copies of Bose's United States Registration Certificates for the BOSE Trademarks are attached to the Brownlee Declaration as Exhibit 1.

The registrations for the BOSE Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 6. The registrations for the BOSE Trademarks constitute *prima facie* evidence of their validity and of Bose's exclusive right to use the BOSE Trademarks pursuant to 15 U.S.C. § 1057(b).

### B. Defendants' Unlawful Activities

The success of the Bose brand has resulted in its significant counterfeiting. *Id.* at ¶ 13. Consequently, Bose has a worldwide anti-counterfeiting program and regularly investigates

2

suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. *Id*. In recent years, Bose has identified many fully interactive marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Bose Products to consumers in this Judicial District and throughout the United States. *Id*. Despite Bose's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. *Id*. Bose's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit Bose Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are interrelated. *Id.* at ¶ 18. In the event that Defendants provide additional credible information regarding their identities, Bose will take appropriate steps to amend the Amended Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Bose's reputation and the goodwill symbolized by the BOSE Trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the BOSE Trademarks and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new online marketplace accounts under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Declaration of Justin R. Gaudio (the "Gaudio

3

Declaration") at ¶¶ 5-7. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Bose respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using infringing and counterfeit versions of the BOSE Trademarks. *See* Amended Complaint at ¶¶ 2, 15, 24 and 25. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu, et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Bose substantial injury in the State of Illinois.

4

A. **Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

B. **Bose Will Likely Succeed on the Merits**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Bose's Lanham Act and UDTPA claims involve the same elements. *See Packaging Supplies, Inc. v. Harley-Davidson, Inc.*, No. 08-cv-400, 2011 WL

5

1811446, at *5 (N.D. Ill. May 12, 2011). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id*.

In this case, the BOSE Trademarks are distinctive and are registered with the United States Patent and Trademark Office. *See* Brownlee Declaration at ¶¶ 5, 7. The registrations for the BOSE Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id*. at ¶ 6. The registrations for the BOSE Trademarks constitute *prima facie* evidence of their validity and of Bose's exclusive right to use the BOSE Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Bose has not licensed or authorized Defendants to use any of the Bose Trademarks, and none of the Defendants are authorized retailers of genuine Bose Products. *Id*. at ¶ 15. Thus, Bose satisfies the first element of its Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendant's use of the BOSE Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923,

929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id*.

Bose has submitted extensive documentation showing that Defendants are selling Counterfeit Bose Products that look similar to genuine Bose Products and use infringing and counterfeit marks identical to the BOSE Trademarks. Both Bose and Defendants advertise and sell their products to consumers via the Internet, targeting consumers looking for genuine Bose Products. Brownlee Declaration at ¶¶ 11, 14, 15. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Bose Products from Counterfeit Bose Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Bose Products to purchase Counterfeit Bose Products instead. In that regard, Defendants advertise Counterfeit Bose Products using the BOSE Trademarks. *Id.* at ¶ 14. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Bose Products. *CAE, Inc. v. Clean Air Eng'g, Inc*., 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Bose is likely to establish a *prima facie* case of trademark infringement and counterfeiting, false designation of origin, and violation of the UDTPA.

      **C.**    **There Is No Adequate Remedy at Law, and Bose Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully

7

compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the BOSE Trademarks has and continues to irreparably harm Bose through diminished goodwill and brand confidence, damage to Bose's reputation, loss of exclusivity, and loss of future sales. Brownlee Declaration at ¶¶ 21-25. The extent of the harm to Bose's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Bose will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Brownlee Declaration at ¶ 26.

### D. The Balancing of Harms Tips in Bose's Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Bose has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted*,* then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Bose will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in

8

infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Bose has demonstrated, Defendants have been profiting from the sale of Counterfeit Bose Products. Thus, the balance of equities tips decisively in Bose's favor. The public is currently under the false impression that Defendants are operating their Defendant Internet Stores with Bose's approval and endorsement. In this case, the injury to the public is significant, and the injunctive relief that Bose seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

#### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the BOSE Trademarks Is Appropriate

Bose requests a temporary injunction requiring the Defendants to immediately cease all use of the BOSE Trademarks, or substantially similar marks, on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the BOSE

9

Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the BOSE Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Bose is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit Bose Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate

Bose requests an *ex parte* restraint of Defendants' assets so that Bose's right to an equitable accounting of Defendants' profits from sales of Counterfeit Bose Products is not impaired.[1] Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Bose meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Bose has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Bose is entitled, "subject to the principles of equity, to recover ... defendant's

---

[1] Bose has concurrently filed a Motion for Leave to File Under Seal certain documents for this same reason.

profits." Bose's Amended Complaint seeks, among other relief, that Defendants account for and pay to Bose all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Bose's request for a prejudgment asset freeze to preserve relief sought by Bose.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Bose has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### C. Bose Is Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

11

Bose respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Bose's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Bose's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Bose respectfully requests that expedited discovery be granted.

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Bose's evidence of counterfeiting, infringement, and unfair competition, Bose respectfully requests this Court require Bose to post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming Bose's business, its famous Bose brand, and consumers. Without entry of the requested relief, Defendants' sale of Counterfeit Bose Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Bose Products have been manufactured by or emanate from Bose, when in fact, they have not. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing and consistent with previous similar cases, Bose respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

12

Dated this 18th day of November 2019.	Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Plaintiff Bose Corporation*