UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOSE CORPORATION, | |
| Plaintiff, | No. 19 C 7467 |
| v. | Judge Thomas M. Durkin |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Bose Corporation alleges that Defendants sell counterfeit versions of Bose products in violation of the Lanham Act and Illinois law. Each defendant is alleged to be located in China and is identified only by the alias it uses to sell products on eBay, because Bose has no further information about the Defendants' identities. The list of defendant aliases is sealed and none of them have been served due to Bose's concern that identifying the internet aliases before a temporary restraining order is entered would cause Defendants to remove assets from the United States. However, in cases like this it is rare for defendants to appear even after injunctions are entered.

At a hearing on November 21, 2019, and in a subsequent opinion and order, the Court questioned whether all 17 defendants in this case are properly joined under Federal Rule of Civil Procedure 20. *See* R. 25 (*Bose Corp. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 2019 WL 6210939, at *1 (N.D. Ill. Nov. 21, 2019)). In the past, the Court has seen similar cases filed with

dozens and even hundreds of defendants joined in a single complaint. The Court ordered Bose to file a brief addressing joinder and on December 10, 2019 heard oral argument from Bose's counsel and testimony from its in-house counsel. The Court has also considered Bose's submissions of supplemental authority, R. 38; R. 39, and Bose's supplemental memorandum of January 28, 2020, R. 42. For the following reasons, the Court finds that the 17 defendants in this case are properly joined.

## Analysis

Bose has come to court to have important statutory rights vindicated. All people should be permitted to come to court to resolve justiciable disputes. Restricting that opportunity would undoubtedly encourage self-help, a decidedly bad result. The Court has discretion to apply Federal Rule of Civil Procedure 20—governing permissive joinder—to manage the structure of lawsuits in a manner that encourages the lawful resolution of disputes. Nevertheless, the Court and plaintiffs like Bose cannot be lawless and must abide by Rule 20's terms.

Rule 20(a)(2)(A) permits defendants to be "joined in one action . . . if any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." But how should courts identify the relevant "transaction or occurrence" in a given case? The Supreme Court and Seventh Circuit have noted that there is no objective way to divide the world into "transactions or occurrences." *See Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) ("'Transaction' is a word of flexible meaning."); *Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) ("[T]here is no formalistic

test for determining whether suits arise out of the same transaction or occurrence.").[1] "In its broadest sense, all of history may be regarded as a 'single occurrence or affair;' and in its narrowest sense, every fraction of a second may be conceptually divorced from its predecessors and its successors. Neither extreme approach, of course, is useful in determining a convenient unit of legal controversy for purposes of judicial administration." Timothy P. Kenny, *What Identifies a "Cause of Action"; Joinders*, 50 Marq. L. Rev. 101, 104 (1966).[2] Without an objective basis to identify "transactions or occurrences," the proper analysis is an investigation of the fairest and most efficient way for a plaintiff to seek relief for the harm they have alleged. *See Chavez v. Illinois State Police*, 251 F.3d 612, 632 (7th Cir. 2001) (courts should permit joinder when it "will comport with the principles of fundamental fairness," and should not permit joinder if it "would create prejudice, expense or delay"); *see also Papachristos v. Hilton Mgmt., LLC*, 2015 WL 1094852, at *1 (N.D. Ill. Mar. 10, 2015) ("[C]ourts liberally construe Rule 20 in the interest of convenience and judicial economy, 'entertaining the broadest possible scope of action consistent with fairness to the parties [such that] joinder of claims, parties and remedies is strongly encouraged.'" (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966))); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 252 (N.D. Ill. 2011) ("[I]n many courts

---

[1] Moreover, the "Seventh Circuit has not directly addressed the meaning of 'same transaction or occurrence' in Rule 20." *Papachristos v. Hilton Mgmt., LLC*, 2015 WL 1094852, at *3 (N.D. Ill. Mar. 10, 2015) (citing *State Farm Fire & Cas. Co. v. Electrolux Home Prods.*, 2012 WL 1287698, at *6 (N.D. Ill. Apr. 16, 2012)).

[2] Available at https://scholarship.law.marquette.edu/cgi/viewcontent.cgi?article=2473&context=mulr.

such requirements for joinder are liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive outcome of the action."). Courts have also described this analysis as an examination of whether there is a "logical relationship" among the claims and parties in a case. *See Moore*, 270 U.S. at 610; *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012). Simply put, courts are tasked with determining whether it makes sense for the parties and claims to be litigated in the same case. The Court has "considerable discretion" and "flexibility" in determining whether the plaintiff has plausibly alleged such a relationship. *See UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018).

In this case, the most obvious candidates for the relevant "transactions or occurrences" for purposes of joinder are the alleged sales of counterfeit products. Finding the sales to be the relevant "transactions" has the semantic advantage that "sales" are generally defined as a kind of "transaction." But it is not necessarily true that this semantic coincidence points in the right direction for analyzing whether Bose has properly joined the defendants in this case. After all, not all cases are about sales transactions, and logical relationships still must be present among the claims and parties not engaged in sales transactions. What is a fair and efficient treatment of Bose's claims in this case may or may not be revealed by focusing on the sales transactions relevant to this case.

Indeed, if the Court were to equate Rule 20 "transactions or occurrences" with the "sales transactions" at issue here, the Court would find that Defendants are not

4

properly joined. Most courts agree that, in general, "simply committing the same type of violation in the same way does not link defendants together for the purposes of joinder." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014). And beyond the defendants selling the same counterfeit products through similar internet stores, Bose does not allege any other readily apparent connection between the defendant seller aliases and the products they sell. Instead, Bose points out similarities among the aliases' webpage designs and marketing information, arguing that these similarities permit a plausible inference that the aliases are actually all connected in some way. But even if the webpages were all identical, that would not overcome the likelihood that Defendants are just copycats, both of the Bose style—which is precisely the claim here—and of each other. Defendants are alleged to be counterfeiters, not businesses interested in differentiating themselves and establishing their own brands. By definition counterfeiters want to blend in to cause consumer confusion. This makes it almost impossible for Bose to justify joinder by identifying similarities in the webpages. And in any event, Bose has been able to identify only minimal similarities among two or three small subsets of the 17 defendants in this case.

      Bose argues, however, that its inability to demonstrate extensive similarities among all the aliases' webpages should not be determinative of the joinder issue. Bose contends that its allegation that Defendants are all unidentified and based in China bolsters its joinder allegations. To the extent Bose suggests that these factors increase the probability that Defendants are all connected, the Court is unpersuaded. It is

5

simply not plausible that there is only one counterfeiter of Bose's products in the entire world, or even just in China. Indeed, in addressing a recent decision finding that joinder was not proper in a similar Lanham Act case, Bose implicitly conceded that it is *not* making this argument. *See* R. 42 at 2 ("The Estee Lauder Order's narrow approach does not permit joinder of *any defendants*—it requires that a plaintiff show that multiple e-commerce store seller aliases are operated by the *same* individual or entity, i.e., a single defendant." (emphasis in original) (citing *Estée Lauder Cosmetics Ltd. v. The Partnerships & Unincorporated Assocs. Identified on Schedule A*, 2020 WL 433870 (N.D. Ill. Jan. 27, 2020))).

Instead of arguing that Defendants are all actually one entity, Bose contends that Defendants are simply "coordinated" in that they share information about how to successfully sell counterfeit products in the United States and how to evade legal enforcement. Bose identifies specific websites or chat-rooms where counterfeiters based outside the United States engage in such information sharing. Sharing information in this way might be sufficient to establish joinder. And it would probably be sufficient to plausibly allege the kind of agreement necessary to state a claim for conspiracy. The problem is that Bose has not connected any of the Defendants to the chat-rooms and websites it identifies. Bose *suspects* that Defendants communicate through the chat rooms and websites, but it has not provided a basis to make that allegation. Without an unqualified allegation that Defendants participate in the chatrooms, Bose's allegation of their participation "on information and belief" is no better than a conclusory allegation of communication or conspiracy, which courts

6

have rejected. *See Wilson v. Rundle*, 774 Fed. App'x 989, 991 (7th Cir. 2019) (holding that "bare allegation of conspiracy" is insufficient to state a claim).[3] Since Bose cannot allege that the particular defendants in this case participated in the alleged information sharing, Bose's "coordination" theory of joinder cannot survive either.[4] And all that is left of Bose's joinder argument is the allegation that Defendants committed "the same type of violation in the same way," which *AF Holdings* explained is insufficient, at least if sales transactions are the relevant "transaction or occurrence." 752 F.3d at 998.

The *AF Holdings* case (which seems to prohibit joinder here) addressed claims made against a group of BitTorrent file-sharers. The BitTorrent software protocol facilitates file sharing over the internet by creating an identical copy of each shared file for each connected file-sharer. The group of connected file sharers is known as a "swarm." This process makes downloading files much faster because each member of the swarm can act as a source for the file, as opposed to the original file owner having to serve as the file source for every new download. *See Zambezia Film Pty, Ltd. v. Does 1-65*, 2013 WL 4600385, at *1-2 (N.D. Ill. Aug. 29, 2013). BitTorrent file-sharers do not necessarily know or have any connection to any of the other file sharers. But

---

[3] Although it is helpful to consider whether the allegations in this case are analogous to conspiracy allegations sufficient to establish joinder, a conspiracy claim is not necessary for liability here because Bose alleges that all defendants directly sell counterfeit products.

[4] However, at least two courts in this district have disagreed and found such allegations sufficient to establish joinder. *See Too Faced Cosmetics, LLC v. The Partnerships and Unincorporated Assocs. Identified on Schedule A*, 19 C 7762 (N.D. Ill. Dec. 17, 2019), R. 29; *Weifang Tengyi Jewelry Trading Co. Ltd. v. ExtraFind, et. al.*, 18 C 4651 (N.D. Ill. Dec. 19, 2018), R. 150, R. 194.

they do know that their ability to access certain files is dependent upon and enhanced by the participation of other file sharers.

*AF Holdings* rejected joinder of defendant BitTorrent file-sharers unless the plaintiff could allege that the defendant file-sharers "participat[ed] in the same swarm at the same time." 752 F.3d at 998. The court reasoned that file-sharers who are not part of the same swarm at the same time "are like two individuals who play at the same blackjack table at different times. They may have won the same amount of money, employed the same strategy, and perhaps even played with the same dealer, but they have still engaged in entirely separate transactions." *Id.*

Many courts around the country have been persuaded by this reasoning. But the majority of courts in this district have held that *AF Holdings* imposes too narrow a construction of "transaction or occurrence." *See PTG Nevada, LLC v. Does 1-25*, 2016 WL 3521941, at *3 (N.D. Ill. June 28, 2016); *see also Glacier Films (USA), Inc. v. Does 1-29*, 2015 WL 8989217, at *3 (N.D. Ill. Dec. 15, 2015); *reFX Audio Software, Inc. v. Does 1-111*, 2013 WL 3867656, at *3 (N.D. Ill. July 23, 2013); *Zambezia Film*, 2013 WL 4600385, at *4-5; *Bicycle Peddler, LLC v. Does 1-12*, 295 F.R.D. 274, 277-78 (N.D. Ill. 2013). Those courts have pointed out that once a file-sharer joins a swarm, the copy of the file created for that file-sharer is also uploaded to the swarm and remains there even after the file-sharer has left the swarm. "Thus, it cannot be said that subsequent transfers of that file are entirely 'independent' of the earlier transfers; all of the transfers involve the very same digital file and the earlier transfers . . . facilitate the later transfers." *Bicycle Peddler*, 295 F.R.D. at 277-78. A

8

file-sharer who leaves files in the swarm does not transfer them directly to file-sharers who join the swarm later. But "nothing in Rule 20 suggests that joinder requires a direct transaction between every defendant." *Id.* "To the contrary, the language of the Rule permitting joinder where there has been a 'series' of transactions seems expressly to contemplate that the *transactional link* between parties may be more attenuated." *Id.* (emphasis added). The court in *Bicycle Peddler* continued:

> BitTorrent requires a cooperative endeavor among those who use the protocol. Every member of a swarm joins that cooperative endeavor knowing that, in addition to downloading the file, they will also facilitate the distribution of that identical file to all other members of the swarm, without regard to whether those other members were in the swarm contemporaneously or whether they joined it later. In that light, permitting joinder among non-contemporaneous swarm participants does not seem novel or extreme; the law governing joint ventures and conspiracies, for example, clearly permits plaintiffs to proceed against groups of defendants who engaged in *a cooperative endeavor to facilitate an unlawful object* whether or not all of the members of the group took part in all of the actions of the group and without regard to when the members joined the group.

*Id.* at 278 (emphasis added).

*Bicycle Peddler* equated a "transactional link" between defendants with establishing "a cooperative endeavor to facilitate an unlawful object." Generally, this equation holds true: for instance, defendant BitTorrent file-sharers participating in a cooperative swarm are linked by a common file transfer; and defendants participating in a conspiracy are linked by their agreement. But the internet has enabled previously inconceivable "cooperative endeavors" that are not *transactional* in nature. Rather, many cooperative endeavors simply *occur* as a result of the number

9

of people who can interact through the internet (often anonymously and unintentionally).

As discussed, Bose's inability to plausibly allege "transactional links" among Defendants is fatal under the reasoning of *AF Holdings*, and even cases like *Bicycle Peddler*. But Rule 20 joinder can be based not just on "transactions," but also on "occurrences." Of course, Rule 20 does not define "occurrence" any more than it defines "transaction." And it appears that no court has considered the meaning of "occurrence" apart from the meaning of "transaction," even though "[c]anons of construction ordinarily suggest that terms connected by a disjunctive"—as are "transactions or occurrences" in Rule 20—"be given separate meanings." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 229 (1993). But the dictionary definitions of the two words show that "occurrence" is much broader than "transaction." According to the Merriam-Webster dictionary, "transaction" generally involves a "reciprocal[] affect" or "exchange," whereas an "occurrence" is defined as something that simply "happens" or "appears." Unlike a "transaction," an "occurrence" is not necessarily the product of joint or coordinated action.

The internet frequently produces occurrences that can be described as cooperative but not transactional or intentionally coordinated. Individual actions which alone may have minimal impact on society or the economy can have a substantial impact through aggregation that is only possible through the internet. Individuals on the internet can openly reach billions of people with a single click of a mouse, while at the same time hiding their identities, frustrating law enforcement.

10

As a result, an "occurrence" of mass harm easily can be inflicted even if there is no express "transactional" coordination among the attackers.

Rule 20's inclusion of the term "occurrence" should allow plaintiffs to join in a single case the defendants who participate in such unlawful occurrences, despite the lack of a "transactional link." The kind of harmful occurrences the internet enables—including mass foreign counterfeiting—were inconceivable when Rule 20 was drafted. But the Rule's inclusion of the term "occurrence" suggests that joinder is appropriate in cases alleging harm that is not strictly "transactional."

Bose has plausibly alleged such a harmful occurrence here. Defendants allegedly take advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate Bose's trademarks with impunity. Like the BitTorrent swarms, it is plausible that Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they do not engage in direct communication or coordination. The more of them there are, the more difficult it is for Bose to successfully defend its trademarks (in part because the cases raise thorny issues of procedure). Contrary to the blackjack table analogy employed in *AF Holdings*, Bose's in-house council testified to the difficulty the company faces in what amounts to a game of "whack-a-mole." Bose's counsel testified that many of the manufacturers are not large factories but small-time operations, sometimes operating out of apartments. Even with the assistance of the Chinese government in pursuing them, they continue to simply pop up somewhere else. *See* R. 37 at 34:6-15.

11

The "swarm" terminology from the BitTorrent cases is revealing in this case as well, in that Bose faces a swarm of attacks on its trademarks. True, every individual counterfeiter can be said to cause a distinct injury. But that is not Bose's reality. Bose does not perceive any one counterfeiter to be the problem. Each injury by itself is relatively inconsequential to Bose. Rather, it is the injuries in the aggregate—the swarm—that is harmful and from which Bose seeks shelter. From Bose's perspective, filing individual causes of action against each counterfeiter ignores the form of harm it faces. Seeking relief against each member of the swarm one by one defies common sense, because it is the swarm—the fact that all Defendants are attacking at once—that is the defining aspect of the harm from which Bose seeks relief. Joinder of all defendants who are part of the swarm attacking Bose's trademarks flows easily from conceptualizing the swarm as the relevant Rule 20 "occurrence."

One might make the counter-observation that an attack by a swarm implies "coordination" in some form, which Bose has not plausibly alleged. But that misses the point. From the *plaintiff's perspective* (which is the appropriate perspective at the pleading stage) it is irrelevant whether the swarm is intentionally coordinated or simply a product of market forces enabled by the internet. It is reasonable for a plaintiff who is attacked by a swarm (and remember, Bose has made strong allegations that Defendants are indeed violating Bose's trademarks with impunity)

12

to come to the Court for shelter against that conduct.[5] Joinder is appropriate in such circumstances.

This decision is also informed by practical considerations. Probably none of the Defendants will ever make an appearance in this case and the default judgment process will determine the case's outcome in its entirety. So even if the Court ordered the 17 defendants to be severed, it is unlikely that anything would change in the manner in which Bose's claims are litigated or managed.[6] No defendants are prejudiced by permitting joinder in this case. To the extent any defendant appears and raises defenses that differentiate it from the swarm, the Court can always sever that defendant's case under Rule 21, just as the Court on its own severs parties at any point in a case if joinder proves to be unfair. Thus, for the time being, it is fair and efficient for Bose to be permitted to join all 17 defendant internet aliases in this single case.

---

[5] The Court also notes that Bose's in-house counsel testified that the reputational harm caused by counterfeit electronics is greater than that for other counterfeit products because the relatively high price of counterfeit electronics is such that it is less likely that that the consumer realizes they are not purchasing the real brand. *See* R. 37 at 25:6-15.

[6] Requiring the filing of 17 separate lawsuits might generate increased filing fees. But the purpose of the Federal Rules of Civil Procedure is not to generate income for the court. Requiring the filing of separate complaints could flood the courts with thousands of additional single defendant Lanham Act cases, with no difference in resolution of nearly every case in a practical sense. The only thing that will inevitably occur is the slowdown of adjudications of other lawsuits, or the decrease of filings of cases which on their face have alleged plausible violations of the Lanham Act.

**Conclusion**

When a defendant does not appear and the Court must make decisions without the benefit of adversarial argument, the Court trusts that the plaintiff will provide the Court with the necessary information to grant the plaintiff relief that is appropriate. But with the continued proliferation of Lanham Act cases filed against numerous defendants, the Court is concerned that plaintiffs are not proceeding consistently even though the only real difference in many of the cases is the type of product at issue. For instance, some complaints have been filed without naming defendants until after the case has been assigned to a judge (although that practice appears to have stopped since it was brought to plaintiffs' counsel's attention, *see* R. 25). Motions are made for prejudgment asset restraint with minimal (if any) justification for the dollar amounts sought to be restrained. These concerns caused this Court (and others) to take a closer look at all aspects of Lanham Act cases like this, including whether joinder of numerous defendants is appropriate.

The Court has explained that it is no longer particularly concerned with joinder of multiple defendants alleged to be counterfeiters in circumstances like those alleged in this case. But Bose's counsel, and any other attorneys bringing similar actions, should understand that the concerns motivating the Court's examination of joinder persist. And the Court may even reexamine the reasoning of this opinion in future cases with allegations that do not generally map those present in this case.

At the hearing set for February 20, 2020, the Court will address the pending motions for electronic service and a temporary restraining order. At that hearing,

counsel should be prepared to address the Court's concerns about fair process, particularly justification for any asset restraint sought.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: February 19, 2020